## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**ISAAC LEYBA,**

      **Plaintiff,**

**vs.**                                                        **No. CIV-01-1323 JP/RHS**

**STATE OF NEW MEXICO, DEPARTMENT
OF HEALTH, LAS VEGAS MEDICAL
CENTER, and JOHN ESQUIBEL,
individually,**

      **Defendants.**

_____

**LEONARD R. LUDI,**

      **Plaintiff,**

**vs.**                                                        **No. CIV-01-1426 JP/RHS**

**STATE OF NEW MEXICO, DEPARTMENT
OF HEALTH, LAS VEGAS MEDICAL
CENTER, and JOHN ESQUIBEL,**                    **(Consolidated)**
**individually,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

On May 2, 2003, Defendants filed a Motion for Summary Judgment as to Claims of

Plaintiff Ludi (Doc. No. 45) and a Motion for Summary Judgment as to Claims of Plaintiff Leyba

(Doc. No. 47).  On June 9, 2003, following Plaintiffs' response to Defendants' motions for

summary judgment, Defendants filed a Motion to Strike Affidavits of Plaintiffs (Doc. No. 54).

Having reviewed the parties' arguments and the evidence, this Court will deny Defendants' Motion to Strike Affidavits of Plaintiffs and deny both Defendants' motions for summary judgment.

## I.      Motion to Strike Affidavits and Local Rule 56.1

The first task before the Court is to determine which facts the Court may consider when ruling on Defendants' motions for summary judgment.  Defendants move to strike Plaintiffs' affidavits in support of their response to Defendants' motions for summary judgment on the ground that Plaintiffs' affidavits contain inadmissible evidence.  FED. R. CIV. P. 56(e) provides: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Moreover, in ruling on a motion for summary judgment, a court may consider only admissible evidence.  World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).  After reviewing Plaintiffs' affidavits, the Court finds that portions of the affidavits are not based on personal knowledge, are conclusory, and are based on hearsay.  While it is clear that this Court may consider only admissible evidence when deciding a motion for summary judgment, striking portions of Plaintiffs' affidavits prior to the Court's consideration of the pleadings and supporting evidence is not the proper remedy.  Rather, this Court has assessed the admissibility of the evidence presented through affidavits, deposition, or other methods as part of the Court's consideration of Defendants' motions for summary judgment.  Pinkerton & Laws Co., Inc. v. Roadway Exp., Inc., 650 F.Supp. 1138, 1141 (N.D. Ga. 1986).  Therefore, Defendants' motion to strike should be denied and this Court will consider only those facts in Plaintiffs' affidavits that are admissible.

2

Plaintiffs, however, also failed to obey D.N.M.LR-Civ. 56.1 in responding to Defendants'
motions for summary judgment.  Under D.N.M.LR-Civ. 56.1(b), a memorandum in opposition to
a motion for summary judgment "must contain a concise statement of the material facts as to
which the party contends a genuine issue does exist."  Each fact that is disputed by the opposing
party must be numbered, must refer with particularity to those portions of the record upon which
the party relies, and must state the number of the movant's fact that is disputed.  Id.  Unless the
party opposing the motion for summary judgment specifically controverts the movant's facts, the
movant's facts "will be deemed admitted."  Id.

In this case, Plaintiffs did not indicate which material facts are in dispute, did not number
the facts in dispute, and did not state the number of the Defendants' facts that are disputed.
Instead, Plaintiffs refer the Court to Plaintiff Ludi's and Plaintiff Leyba's affidavits to establish the
disputed material facts Plaintiffs claim exist.  Plaintiffs' affidavits, however, do not controvert
with specificity the enumerated facts alleged in Defendants' motions for summary judgment.  As
Plaintiffs clearly failed to adhere to D.N.M.LR-Civ. 56.1(b), all material facts set forth in
Defendants' statement of facts "will be deemed admitted."

## II.    **Factual Background**

The Court will view the facts in the light most favorable to the Plaintiffs.  See EEOC v.
Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1189 (10th Cir. 2000).  The following are the
facts, established by admissible evidence, that most favor the Plaintiffs.

Plaintiff Isaac Leyba began working for the Las Vegas Medical Center on June 4, 1999, as
a carpenter.  Defs.' Mem. (Doc. No. 48) Ex. A at 4-5.  Plaintiff Leonard Ludi began working at
the Las Vegas Medical Center on July 1, 1998, as a nurse tech, and in February of the following

year, changed positions to a carpenter.[1]  Defs.' Mem. (Doc. No. 46) Ex. A at 8.  While employed in the positions of carpenter, Plaintiffs Ludi and Leyba were supervised by Defendant John Esquibel.

Sometime prior to July 2000, Defendant Esquibel took several nude photographs of female employees who worked at the Las Vegas Medical Center.  Plaintiff Ludi saw the nude photographs once every three or four months, first from Defendant Esquibel and subsequently from Robert Baca and David Archuleta, co-employees of Plaintiffs.  Plaintiff Ludi saw five or six nude photographs.  Id. at 28.  Plaintiff Leyba also saw the nude photographs.  Defendant Esquibel would call Plaintiff Leyba into his office and show him the nude photographs.  Defs.' Mem. (Doc. No. 48) Ex. A at 13-14.  While showing the photographs to Plaintiffs, Defendant Esquibel would make comments such as, "This is what I can do here at the Las Vegas Medical Center," and, "I can get people hired and fired."  Id.; Pl. Ludi Aff. at 2-3; see also Pl. Leyba Aff. at 4.  Both Plaintiffs believed that Defendant Esquibel was exerting a harassing level of pressure and threat over the women in order for him to be able to obtain their nude photographs.  See Pl. Ludi Aff. at 5; Pl. Leyba Aff. at 4-5.

Plaintiff Ludi complained to Defendant Esquibel about the photographs sometime before July 2000 on the basis that if the female employees knew that their photographs were being displayed, they would be upset.  Furthermore, both Plaintiffs Leyba and Ludi showed their disapproval of the photographs with their verbal and non-verbal behavior.  Pl. Ludi Aff. at 6; Pl. Leyba Aff. at 6.

---

[1]Plaintiff Ludi's deposition states that Plaintiff Ludi began working at the medical center July 1, 1988, which appears to be an error.  From the context of his deposition, it seems that Plaintiff Ludi actually began working at the medical center on July 1, 1998.

In July 2000, Defendant Esquibel's office was broken into and the nude photographs were stolen.  Subsequently, in late January 2001, one of the nude photographs was mailed anonymously to the office of Felix Alderete, the Hospital Administrator.  After receiving the photograph, Defendant Las Vegas Medical Center conducted an internal investigation into the taking of the photograph.  Around this same time, Defendant Esquibel began conducting private meetings in his office with Robert Baca, David Archuleta, and James Lovato, co-workers of Plaintiffs.  Defs.' Mem. (Doc. No. 48) Ex. F.

On February 7, 2001, Plaintiff Leyba was interviewed by an investigator, Sherry Riordan, regarding the nude photographs.  During this interview, Plaintiff Leyba complained about Defendant Esquibel and the nude photographs.

On February 14, 2001, Plaintiff Leyba was approached by Robert Baca and David Archuleta, who asked Plaintiff Leyba to sign a petition regarding Plaintiff Ludi.  Defs.' Mem. (Doc. No. 48) Ex. A at 34-35; Ex. F.  The petition stated that Plaintiff Ludi was disrespectful and critical of his co-workers and that none of his fellow carpenters wanted to work with him.  Id. Plaintiff Leyba refused to sign the petition.  Defendant Esquibel's signature was not on the petition and he was never approached with the petition.

On February 21, 2001, Defendant Esquibel issued Plaintiff Leyba a "Counseling Statement" for being "insubordinate" in telling Defendant Esquibel, in front of other co-workers, how to do a job better and easier than the way Defendant Esquibel wanted it done.  The next day, February 22, 2001, Plaintiff Leyba filed an internal grievance in which he alleged "unethical work practices, intimidation, corrupt chain of command, and hostile work environment."  Defs.' Mem. (Doc. No. 48) Ex. A at 5.  On February 28, 2001, Louise Juarez, the Director of Human

5

Resources, told Plaintiff Leyba that Defendant Esquibel pulled the Counseling Statement from Plaintiff Leyba's file. <u>Id.</u> Ex. A at 57. Plaintiff Leyba was then asked to pull his grievance, but he refused. <u>Id.</u>

Sometime before February 15, 2001, Plaintiff Ludi was also interviewed by Sherry Riordan concerning the nude photographs of female employees. Moreover, at some point during the pendency of the investigation into the photographs, Plaintiff Ludi commented to Louise Juarez that something was amiss because the women in the photographs would not have posed for the pictures without some kind of pressure. Pl. Ludi Aff. at 6-7.

After the onset of the investigation, Plaintiff Ludi was excluded by people in the maintenance department and was excluded from meetings in Defendant Esquibel's office. Defs.' Mem. (Doc. No. 46) Ex. A at 24-25. In addition, no one at work would talk to Plaintiff Ludi; they would not issue him tools; they would not issue him a truck, and if they did, it was one of the worst trucks. <u>Id.</u> at 20-22. Both Plaintiffs Ludi and Leyba were given the least desirable job assignments; were told to complete tasks that previously would require an entire crew; and were given assignments with tight deadlines. Pl. Ludi Aff. at 10; Pl. Leyba Aff. at 11. On one occasion, Defendant Esquibel insisted that Plaintiff Ludi work in stifling heat inside a manhole, with inadequate ventilation. Pl. Ludi Aff. at 10.

On February 15, 2001, Plaintiff Ludi filed an internal grievance against Defendant Esquibel regarding the alleged petition circulated by some of Plaintiff Ludi's co-workers. Plaintiff Ludi's grievance alleged that Defendant Esquibel maintained a hostile environment within the department, which increased after concerns about Defendant Esquibel's neglect of workplace safety were brought to the attention of Defendant Esquibel's superiors. Plaintiff Ludi's February

15, 2001 grievance was not resolved, however, because Louise Juarez asked Plaintiff Ludi to resubmit his grievance indicating exactly what he was grieving.  Id. at 32.  Plaintiff Ludi did not fill out another grievance because he was off work from February 25, 2001, to March 26, 2001, for surgery.  Following the surgery, Plaintiff Ludi came back to work and was placed on modified duty from March 26, 2001, to May 26, 2001, during which time he was supervised by Norma Montoya.

As a result of Defendant Las Vegas Medical Center's investigation, Defendant Esquibel was suspended for three days, effective May 21, 2001, through May 23, 2001, for his involvement in the taking of only one of the nude photographs and its dissemination within the department.  Defs.' Mem. (Doc. No. 48) Ex. E at 1.  The female subject of the photograph was also suspended.

After Plaintiff Ludi returned from modified duty, he was again supervised by Defendant Esquibel.  The atmosphere at work continued to be "bad."  Defs.' Mem. (Doc. No. 46) at 6; Ex. A at 36.  Defendant Esquibel would not talk to Plaintiff Ludi, nor would the other carpenters.  Id.  All of Plaintiff Ludi's orders were given to Plaintiff Leyba to give to Plaintiff Ludi.  Id. Ex. A at 35-36.

On June 1, 2001, Plaintiff Ludi was assigned to fix deficiencies throughout the Forensic unit that had been identified by the Fire Marshall.  Plaintiffs Ludi and Leyba proceeded to fix the deficiencies, except for the pinning of a door.  Id. at 37-38.  On June 18, 2001, Defendant Esquibel performed a walk through of the unit.  Id. Ex. F.  As a result of the walk through, on July 2, 2001, Defendants proposed suspending Plaintiff Ludi for insubordination related to not completing work required by the Fire Marshall.  Instead of a suspension, however, Plaintiff Ludi

received a letter of reprimand on July 18, 2001.  The letter stated that the reason for Plaintiff

Ludi's reprimand was "insubordination" because "many of the tasks on the Fire Marshall's list

were either completed poorly or had not been done at all."  Id. Ex. G.  Anthony Lucero and Louie

Urioste, physical plant managers, verified that the list had not been completed.  Id.  The letter of

reprimand was signed by Defendant Esquibel, Anthony Lucero, Louie Urioste, and Felix Alderete.

Id. at 2.

On July 6, 2001, Plaintiff Ludi transferred to a new position in adaptive equipment and

was placed under a new direct supervisor and an indirect supervisor, Paul Crespin.  Id. at 6; Ex. A

at 6.  After this transfer, Plaintiff Ludi's contact with Defendant Esquibel was occasional and

never threatening.  Plaintiff Ludi's new supervisor, however, often wrote Plaintiff Ludi up for

minor infractions.  Pl. Ludi Aff. at 10.

On August 23, 2001, Plaintiff Leyba was involved in a confrontation with a co-worker

during a cement job.  After pouring cement, Plaintiff Leyba lit up a cigarette.  David Archuleta

told him to put out the cigarette.  When Plaintiff Leyba refused, Mr. Archuleta verbally threatened

Plaintiff Leyba.  Robert Baca, the acting supervisor, came by and told Mr. Archuleta to leave and

Plaintiff Leyba to stay and complete the cement job.  Plaintiff Leyba, however, left the job site to

go to human resources.  Defs.' Mem. (Doc. No. 48) at 6; Ex. A at 72-74.  In response to this

incident, Louie Urioste; Steve Martinez, the Management Operations Director; and Felix Alderete

proposed suspending Plaintiff Leyba for five days.  Plaintiff Leyba was suspended from October 1,

2001, to October 5, 2001.  Defendant Esquibel was not involved in either the August 23, 2001

incident or the resulting suspension.

Plaintiff Leyba filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 4, 2001.  The hostility previously felt by Plaintiff Leyba continued after he filed the EEOC charge, as he was often scolded and reprimanded.  Pl. Leyba Aff. at 12.

On November 1, 2001, Plaintiff Ludi also filed an EEOC charge.  Plaintiff Ludi sent Paul Crespin a letter of resignation on November 13, 2001.  Defs.' Mem. (Doc. No. 46) at 7; Ex. A at 50-51.  Plaintiff Ludi's last day at the medical center was December 1, 2001.  Id. Ex. A at 51.  Plaintiff Ludi left the medical center because he felt he was the victim of retaliation and harassment and that Defendants were seeking a third letter of reprimand against him.

Plaintiff Leyba filed suit against the State of New Mexico, Las Vegas Medical Center, on November 26, 2001.  Plaintiff Ludi filed suit against Defendants State of New Mexico and John Esquibel on December 20, 2001.  On January 9, 2002, both Plaintiffs Leyba and Ludi amended their complaints; Plaintiff Leyba added Defendant Esquibel.  On June 14, 2002, Plaintiffs Leyba's and Ludi's suits were consolidated.  Plaintiffs Leyba and Ludi seek damages against Defendants for retaliation in violation of Title VII and the New Mexico Human Rights Act ("NMHRA").  Plaintiffs also seek damages under 42 U.S.C. § 1983 against Defendant Esquibel, individually, for deprivation of their First Amendment rights.

III.     **The Summary Judgment Standard**

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  When applying this standard, the Court examines the record evidence and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  Applied Genetics Int'l, Inc. v.

First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  The moving party bears the

initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett,

477 U.S. 317, 325 (1986).  Only then does the burden shift to the non-movant to come forward

with evidence showing that there is a genuine issue of material fact.  Bacchus Indus., Inc. v. Arvin

Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  The non-moving party may not avoid summary

judgment by resting upon the mere allegations or denials of his or her pleadings.  Id.  To

withstand a motion for summary judgment, the non-movant must make specific reference to

evidence in the record.  Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1546 (10th Cir. 1995);

D.N.M. LR-Civ. 56.1(b) (placing similar burden on both parties).  Unsubstantiated allegations, no

matter how true they might be, cannot be considered.  Gross, 53 F.3d at 1546.

IV.    **Discussion**

    A.    **Retaliation under Title VII and the NMHRA**

Title VII prohibits an employer from discriminating against an employee who has

"opposed any practice made an unlawful employment practice by this subchapter, or because he

has made a charge, testified, assisted, or participated in any manner in an investigation . . . under

this subchapter."  42 U.S.C. § 2000e-3(a).  In analyzing Title VII retaliation claims, courts apply

the burden-shifting approach set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-

04 (1973).  Plaintiffs must first establish a prima facie case of retaliation.  Id.  In order to make a

prima facie case of retaliation, Plaintiffs must show that (1) they engaged in protected conduct;

(2) they were subject to adverse employment actions; and (3) a causal connection exists between

the protected activity and the adverse action.  O'Neal v. Ferguson Constr. Co., 237 F.3d 1248,

1252 (10th Cir. 2001).  Once Plaintiffs make a prima face showing, the Defendants must articulate

a legitimate nondiscriminatory reason for the adverse employment action.  Plaintiffs must then respond by showing that the Defendants' reasons for their actions are pretextual.  McDonnell Douglas, 411 U.S. at 802-04; O'Neal, 237 F.3d at 1252.  Plaintiffs' burden of establishing a prima facie case of retaliation under the NMHRA, NMSA 1978, § 28-1-7 (1969), is identical to their burden under Title VII.  Gioia v. Pinkerton's Inc., 194 F.Supp.2d 1207, 1220 (D.N.M. 2002); see also Cates v. Regents of the New Mexico Institute of Mining & Technology, 124 N.M. 633, 638, 954 P.2d 65, 70 (1998) (applying McDonnell-Douglas burden-shifting approach to NMHRA age discrimination claims).

       1.    Prima Facie Case

          a.    Protected activity

Informal complaints to superiors may constitute protected activity.  O'Neal, 237 F.3d at 1255.  However, informal complaints are only protected by § 2000e-3(a) or the NMHRA if the complaints are in opposition to a "practice made an unlawful employment practice by [Title VII]" or by the NMHRA.  A plaintiff need only have a subjectively good faith belief that Title VII has been violated.  Petersen v. Utah Dep't of Corrections, 301 F.3d 1182, 1188 (10th Cir. 2002).  A plaintiff's opposition can be protected even if plaintiff were wrong about whether the employer had in fact violated Title VII.  Id.  Nevertheless, an employer must know that the employee has engaged in protected opposition.  Id. at 1188-89.  The employee must have somehow communicated his concerns about unlawful discrimination to the individual who took adverse action against him.  Id.; Williams v. Rice, 983 F.2d 177, 181 (10th Cir. 1993) ("[T]o establish a 'causal connection,' plaintiff must show that the individual who took adverse action against him knew of the employee's protected activity.").

In this case, Plaintiffs have shown evidence that they made informal complaints to their supervisor Defendant Esquibel about the nude photographs. Plaintiff Ludi alleges that he complained to Defendant Esquibel that if the female employees shown in the photographs knew that their photographs were being displayed, the female employees would be upset. Plaintiffs Ludi and Leyba assert that they showed their disapproval of the nude photographs by both their verbal and non-verbal behavior. Unlike other co-employees who Defendant Esquibel showed the photographs to, Plaintiffs would not make quips and comments about the photographs.

Defendants argue that this evidence is insufficient to create a jury question because Plaintiffs' comments did not adequately place Defendant Esquibel on notice that Plaintiffs were opposing an unlawful employment practice. Defendants rely on Petersen v. Utah Department of Corrections, 301 F.3d 1182, 1188 (10th Cir. 2002), for support. In Petersen, the Tenth Circuit held that the plaintiff had failed to establish a Title VII retaliation claim where at the time of the alleged adverse actions, the plaintiff had not communicated to her supervisor her belief that her supervisor was unlawfully discriminating against a co-worker based on race. Id. at 1189. At the time of the adverse action, the plaintiff had merely conveyed her disapproval of the treatment of her co-worker, but had not expressed her belief that the mistreatment was based on the co-worker's race. Id.

This Court, however, finds Petersen distinguishable. In Petersen, the plaintiff never mentioned racial discrimination to her supervisor, so her supervisor would not have been on notice that the plaintiff was objecting to an unlawful practice under Title VII, rather than simply objecting to rude and unfair behavior. In contrast, here the nude photographs of the female employees were inherently sexually explicit. Due to the sexually graphic nature of the

photographs and Defendant Esquibel's comments that "This is what I can do here at the Las Vegas Medical Center," Plaintiffs' complaints about the photographs could reasonably indicate their good faith belief that Defendant Esquibel was engaging in sexual discrimination and/or sexual harassment under Title VII or the NMHRA against the female employees shown in the photographs.  Employees need not speak with the clarity and precision of lawyers and need not make a formal accusation of discrimination.  The relevant question is whether Plaintiffs sufficiently conveyed a reasonable concern that Defendant Esquibel was acting in an unlawfully discriminatory manner.  See Verstraete v. Farmers Ins. Co., Inc., 1994 WL 373890 *4 (D.Kan. 1994) ("[F]or reasons of discretion, tact, insecurity, or otherwise, employees do not always brazenly lodge direct allegations of discrimination but may instead simply voice their concerns about the propriety of certain actions . . . the thrust of inartful, subtle, or circumspect remarks nevertheless may be perfectly clear to the employer.").  A jury could reasonably construe Plaintiffs' voicing of disapproval of the photographs as conveying their opposition to sex-based discrimination or harassment in the workplace.  Thus, a question of material fact exists as to whether Plaintiffs' disapproval of and complaints about the nude photographs to Defendant Esquibel constituted protected conduct under Title VII and the NMHRA.[2]

---

[2]Plaintiffs also point to other complaints they made in support of their claim that they engaged in protected activity.  This Court, however, is not convinced that the other complaints, grievances, and charges made by Plaintiffs can support a retaliation claim.  For instance, Plaintiff Ludi's February 15, 2001 grievance, in which he complains of a hostile work environment that increased after safety concerns of workplace conditions were brought to the attention of Defendant Esquibel's superiors, and Plaintiff Leyba's February 22, 2001 grievance concerning unethical work practices, intimidation, a corrupt chain of command, and a hostile work environment do not indicate any opposition to sex discrimination or sexual harassment on the part of Defendant Esquibel, and thus, likely do not constitute protected conduct.  As to Plaintiff Ludi's comment to Louise Juarez that something must be amiss with the nude photographs because he believed that the women would not have posed for the photographs without some kind of

b.    Adverse employment action

Although the Tenth Circuit liberally defines an adverse employment action, a case-by-case approach is used to examine the relevant factors, and a mere inconvenience or alteration of job responsibilities does not constitute an adverse employment action.  Sanchez v. Denver Public Schools, 164 F.3d 527, 532 (10th Cir. 1998).  "Retaliatory conduct other than discharge or refusal to rehire is . . . proscribed by Title VII only if it alters the employee's 'compensation, terms, conditions, or privileges of employment,' or 'adversely affect[s] his [or her] status as an employee.'"  Id. at 533 (citations omitted).  Disciplinary actions such as suspensions or terminations are by their nature adverse, even if subsequently withdrawn.  Roberts v. Roadway Exp., Inc., 149 F.3d 1098, 1104 (10th Cir. 1998).  Moreover, co-worker hostility or retaliatory harassment, if sufficiently severe, may constitute an adverse employment action.  Gunnell v. Utah Valley State College, 152 F.3d 1253, 1264 (10th Cir. 1998).  An employer, however, will only be held liable for co-workers' retaliatory harassment where its supervisory or management personnel either (1) orchestrated the harassment or (2) knew about the harassment and acquiesced in it in such a manner as to condone and encourage the co-workers' actions.  Id. at 1265.

The following are incidents of alleged co-worker and supervisory hostility, which occurred after the investigation into the nude photographs began:  (1) Plaintiffs Ludi and Leyba were

---

overwhelming severe and pervasive pressure, Plaintiffs have not demonstrated a causal connection between Plaintiff Ludi's statement and any adverse action taken by Louise Juarez.  See Williams, 983 F.2d at 181 (holding that to establish a causal connection, a plaintiff must be able to demonstrate that the individual who took the adverse action against him knew of the employee's protected activity).  Nor have Plaintiffs shown that Defendant Esquibel knew about Plaintiff Ludi's comment to Louise Juarez.  Similarly, Plaintiffs have not demonstrated a causal connection between the filing of their EEOC charges and any specific adverse employment action taken against them because of the filing of the EEOC complaints.

shunned by Defendant Esquibel and their fellow co-workers; (2) Plaintiffs were excluded from meetings in Defendant Esquibel's office; (3) Defendants would not issue Plaintiff Ludi tools; (4) Defendants would not issue Plaintiff Ludi a truck, and if they did, it was one of the worst trucks; (5) both Plaintiffs Ludi and Leyba were given the least desirable job assignments, were told to complete tasks that previously would require an entire crew, and were given assignments with tight deadlines; (6) on one occasion, Defendant Esquibel insisted that Plaintiff Ludi work in stifling heat inside a manhole, with inadequate ventilation; (7) a petition was sent around by co-workers of Plaintiffs that stated that Plaintiff Ludi was disrespectful and critical of his co-workers and that none of his fellow carpenters wanted to work with him; (8) Defendant Esquibel issued Plaintiff Leyba a Counseling Statement for insubordination, which was later pulled from Plaintiff Leyba's file; (9) Plaintiff Ludi was issued a letter of reprimand on July 18, 2001, for insubordination; (10) Plaintiff Leyba was suspended from October 1, 2001, to October 5, 2001, for allegedly threatening a co-worker and for leaving a job site.

Viewing the evidence in the light most favorable to Plaintiffs, the Court finds that the above evidence presents a disputed issue of material fact as to whether Plaintiffs suffered severe hostility from their co-workers and Defendant Esquibel sufficient to constitute an adverse employment action under Gunnell. There is also sufficient evidence indicating that Defendant Esquibel, Plaintiffs' supervisor, orchestrated the harassment or knew about the harassment and acquiesced in it: Defendant Esquibel shunned Plaintiffs; excluded Plaintiffs from meetings in his office; and insisted that Plaintiff Ludi work in stifling heat inside a manhole, with inadequate ventilation. Furthermore, Defendant Esquibel issued the Counseling Statement to Plaintiff Leyba and was involved in giving the letter of reprimand to Plaintiff Ludi. Reprimands such as these are

15

disciplinary actions that by their nature are adverse.  See Roberts, 149 F.3d at 1104.  Based on

Gunnell and Roberts, this Court determines that Plaintiffs have provided sufficient evidence of

adverse employment actions taken against them to survive summary judgment.  Therefore, this

Court will turn to the third element required to make a prima facie case of retaliation.

c.      Causal connection

Defendants argue that Plaintiffs failed to demonstrate a causal connection between the

protected activity and the adverse employment action because the alleged adverse actions

occurred significantly after Plaintiffs' initial complaints.  Although it is unclear from the record the

exact dates when Plaintiffs first made their complaints about the photographs to Defendant

Esquibel, it appears that these complaints were made sometime in late 1999 or early 2000.  The

record, however, is clear that the adverse actions against Plaintiffs occurred shortly after the

medical center began its investigation into the photographs in early 2001.  Within a month or so

of the investigation, Plaintiffs were shunned; Plaintiffs were excluded from meetings; the petition

against Plaintiff Ludi was circulated; Plaintiff Leyba was issued a Counseling Statement for

insubordination; and Plaintiff Ludi was not issued tools or a good truck.  The fact that the adverse

actions may have occurred well after Plaintiffs first voiced their disapproval of the photographs is

not dispositive.  In this case, Defendant Esquibel allegedly began retaliating against Plaintiffs after

the medical center began investigating Defendant Esquibel and his role in the taking of the nude

photographs.  A jury could reasonably conclude that Defendant Esquibel's concern about the

investigation into the nude photographs and what the investigation might uncover prompted his

retaliation against Plaintiffs, who had previously shown their disdain for and opposition to

Defendant Esquibel's conduct.  Accordingly, based on this evidence, a disputed issue of fact

16

exists as to whether there is a causal connection between the adverse actions taken against Plaintiffs and Plaintiffs' complaints about the nude photographs.

Therefore, Plaintiffs have met their burden of establishing a prima facie case of retaliation under Title VII and the NMHRA.

2.      Legitimate Nondiscriminatory Reason

Defendants offer the following legitimate nondiscriminatory reasons for certain adverse actions taken against Plaintiffs: (1) Plaintiff Leyba was issued the Counseling Statement for hollering at his supervisor in front of co-workers; (2) Plaintiff Leyba was suspended for five days for threatening a co-worker and for leaving a job site; and (3) Plaintiff Ludi was issued a letter of reprimand for not completing the assigned tasks on the Fire Marshall's list.  Defendants, however, do not provide any legitimate nondiscriminatory reasons for the shunning suffered by Plaintiff Ludi from his co-workers and Defendant Esquibel; for Plaintiffs' exclusion from Defendant Esquibel's meetings; for Plaintiffs being given the least desirable job assignments, being told to complete tasks that previously would require an entire crew, and being given assignments with tight deadlines; or for Plaintiff Ludi not being issued tools or a good truck to perform his duties. Moreover, there is nothing in the record indicating a legitimate, lawful reason for these actions. Hence, Defendants have failed to adequately present legitimate nondiscriminatory reasons for all the adverse employment actions taken against Plaintiffs.

3.      Pretext

Furthermore, as to the legitimate reasons offered by Defendants for Plaintiff Leyba's Counseling Statement and suspension and for Plaintiff Ludi's letter of reprimand, the Court finds that Plaintiffs have provided sufficient evidence that Defendants' reasons were pretextual.  First,

as to the Counseling Statement, the record shows that the statement was later pulled from Plaintiff Leyba's file, indicating that there were insufficient grounds to issue the Counseling Statement in the first place.  See Defs.' Mem. (Doc. No. 48) Ex. A at 57.  In regard to Plaintiff Leyba's suspension, in his affidavit, Plaintiff Leyba states that the grounds for his suspension were trumped up because Plaintiff Leyba finished the job at the worksite, despite the altercation with his co-worker, David Archuleta.  Plaintiff Leyba also claims that David Archuleta threatened Plaintiff Leyba with physical violence when Plaintiff Leyba joined the crew for a cigarette break, not the other way around.  Defs.' Mem. (Doc. No. 48) Ex. K at 1.  Given this evidence, Plaintiff Leyba has demonstrated that a disputed issue of material fact exists as to whether Defendants' justifications for suspending Plaintiff Leyba and for issuing him a Counseling Statement were pretextual.

With respect to the reprimand issued to Plaintiff Ludi, Plaintiff Ludi states in his deposition that he completed all the repairs on the Fire Marshall's list except for one – the pinning of a door.  Plaintiff Ludi explained that he did not complete the pinning of the door because he was told that another employee would finish that task.  Defs.' Mem. (Doc. No. 46) Ex. A at 37-38.  Based on these facts, the Court determines that Plaintiff Ludi offered sufficient proof to survive summary judgment that the letter of reprimand issued to him for insubordination was a pretext for unlawful retaliation.

Because all inferences must be resolved in favor of Plaintiffs at this stage in the litigation, Plaintiffs' prima facie case, combined with the above evidence of pretext, is sufficient to permit the trier of fact to conclude that the Defendants unlawfully retaliated against Plaintiffs in violation

of Title VII and the NMHRA.  Hence, Defendants' motions for summary judgment as to

Plaintiffs' Title VII and NMHRA retaliation claims will be denied.

B.    **First Amendment**

Defendants argue that Defendant Esquibel is entitled to qualified immunity and that

Plaintiffs' First Amendment claim should be dismissed.  The doctrine of qualified immunity

protects Defendants from the burden of litigation unless Plaintiffs can show that Defendants

violated a "clearly established" constitutional right so that reasonable officials would have

understood that their conduct violated that right.  Dill v. City of Edmond, 155 F.3d 1193, 1204

(10th Cir. 1998).  Thus, this Court must determine whether Plaintiffs have shown sufficient facts

that, if proven, would clearly constitute a First Amendment free speech claim.

At the time of the alleged constitutional violation, the law was clear that a public employer

cannot retaliate against an employee for exercising his First Amendment right to free speech.  Dill

v. City of Edmond, 155 F.3d 1193, 1201 (10th Cir. 1998).  The Tenth Circuit applies the

following four-step analysis in reviewing a plaintiff's free speech claim.  Id.  First, the court

determines whether the employee's speech involves a matter of public concern.  Id.  If so, then the

court balances the employee's interest in commenting upon matters of public concern "'against

the interest of the State, as an employer, in promoting the efficiency of the public services it

performs through its employees.'"  Id. (quoting Pickering v. Bd. of Educ., 391 U.S. 563, 568

(1968)).  Next, if the balance favors the employee, the employee must show that the speech was a

substantial or motivating factor in the detrimental employment decision.  Id.  Finally, if the

plaintiff makes such a showing, the employer may demonstrate that it would have taken the same

action against the employee even in the absence of the protected speech.  Id.

Defendants first contend that Plaintiffs' speech did not involve a matter of public concern. Matters of public concern are those of interest to the community, and not those of interest solely to government employees.  Id.  Although speech related to internal personnel disputes are not usually matters of public concern, speech that discloses impropriety or malfeasance on the part of state employees clearly concerns matters of public import.  Id.  In deciding how to classify particular speech, a court should focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose.  Woodward v. City of Worland, 977 F.2d 1392, 1403 (10th Cir. 1992).  "The mere fact a statement was made in private does not, standing alone, remove it from the purview of public concern."  Burley v. Wyoming Dep't of Family Servs., 2003 WL 1880640 *3 (10th Cir. Apr. 16, 2003) (unpublished decision).

In this case, there is evidence that Plaintiffs voiced disapproval of Defendant Esquibel's taking and displaying of nude photographs of female co-employees.  Contrary to Defendants' assertions, this speech does not merely concern the terms of Plaintiffs' own employment. Plaintiffs' speech regarding the nude photographs expressed disapproval of the way Defendant Esquibel was treating female co-workers, not how Defendant Esquibel was treating Plaintiffs.  As Defendant Esquibel, a state employee, conducted himself in a way that a reasonable person may have believed violated federal and state anti-discrimination laws, Plaintiffs' speech disapproving of Defendant Esquibel's actions constitutes a matter of public concern.  Therefore, Plaintiffs satisfied the first requirement of the four-step test.

As to the second step, Defendants have not argued that a State interest outweighs Plaintiffs' interest in commenting on and opposing Defendants' taking of and displaying nude

photographs of female employees.  Consequently, the balancing of interests tips in Plaintiffs' favor.

Defendants do, however, contest the third factor – that the employee's speech was a substantial or motivating factor in the detrimental employment decision.  As early as 1986, the Tenth Circuit has held that detrimental employment actions necessary to sustain a First Amendment claim can be short of an actual or constructive discharge.  Dill, 155 F.3d at 1204-05. The Tenth Circuit has rejected the position that only adverse employment decisions, such as termination, suspension, or transfer, can constitute detrimental employment actions.  Schuler v. City of Boulder, 189 F.3d 1304, 1309 (10th Cir. 1999).  Instead, the Tenth Circuit has held, "Actions short of an actual or constructive employment decision can in certain circumstances violate the First Amendment."  Id. at 1309-10.  Detrimental employment actions are those that are sufficiently substantial "to present an actual or potential danger that an employee's speech will be chilled."  Keirsey v. Diamond, 145 F.3d 1345 **1 (10th Cir. 1998) (unpublished decision); DeGuiseppe v. Village of Bellwood, 68 F.3d 187, 191 (7th Cir. 1995).  "A campaign of petty harassment may achieve the same effect as an explicit punishment."  Walsh v. Ward, 991 F.2d 1344, 1345 (7th Cir. 1993).

In this case, Plaintiffs have presented the following evidence of actions taken against them by Defendant Esquibel following the investigation into the nude photographs:  (1) Plaintiffs Ludi and Leyba were shunned by Defendant Esquibel and their fellow co-workers; (2) Defendant Esquibel stopped speaking to Plaintiff Ludi completely, and would only communicate work directions through others; (3) Plaintiffs were excluded from meetings in Defendant Esquibel's office; (4) Defendant Esquibel gave Plaintiffs Ludi and Leyba the least desirable job assignments,

told them to complete tasks that previously would require an entire crew, and gave them assignments with tight deadlines; (5) on one occasion, Defendant Esquibel insisted that Plaintiff Ludi work in stifling heat inside a manhole, with inadequate ventilation; (6) Defendant Esquibel issued Plaintiff Leyba a Counseling Statement for insubordination, which Defendant Esquibel later pulled from his file; and (7) Defendant Esquibel, among others, issued Plaintiff Ludi a letter of reprimand on July 18, 2001, for insubordination.  In light of the facts alleged and preexisting case law, this Court concludes that Defendant Esquibel should have known that the hostile treatment, harassment, and reprimands allegedly committed against Plaintiffs in retaliation for their disapproval of the nude photographs would constitute adverse employment actions that present the danger of chilling Plaintiffs' speech, in violation of the First Amendment.  See Schuler, 189 F.3d at 1310 (holding that removal of job duties, issuing written reprimand, giving low score on performance evaluation, and involuntarily transferring plaintiff to another facility constitute detrimental employment actions under the First Amendment).

As to the fourth element, Defendants have the burden of demonstrating that they would have taken the same action against Plaintiffs even without the protected speech.  Dill, 155 F.3d at 1204 n.5.  Here, Defendants merely assert, without any accompanying evidence, that Defendant Esquibel would have taken the same actions against Plaintiffs in the absence of protected speech. Defendants clearly have not met their burden.

In sum, this Court is convinced that, according to prior Tenth Circuit precedents, it was clearly established that Defendant Esquibel's alleged conduct in retaliation for Plaintiffs' complaints about the nude photographs of female employees was actionable under the First

Amendment.  Hence, this Court rejects Defendants' qualified immunity defense and will deny

Defendants' motion for summary judgment as to Plaintiffs' First Amendment claim.


IT IS THEREFORE ORDERED that:

1.      Defendants' Motion to Strike Affidavits of Plaintiffs (Doc. No. 54) is DENIED;

2.      Defendants' Motion for Summary Judgment as to Claims of Plaintiff Ludi (Doc.

No. 45) is DENIED; and

3.      Defendants' Motion for Summary Judgment as to Claims of Plaintiff Leyba (Doc.

No. 47) is DENIED.


_____

CHIEF UNITED STATES DISTRICT JUDGE